IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re ANGELICA SANCHEZ,

Plaintiff,

v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

Defendant.

No. C 16-06480 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this social security appeal, this order finds that substantial evidence supports the ALJ's decision. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**STATEMENT**

**1. PROCEDURAL HISTORY.**

In January 2013, plaintiff Angelica Sanchez applied for disability insurance benefits and supplemental security income, alleging she was unable to work since December 2002 due to degenerative disc disease of the lumbar spine, obesity, and chronic low back strain or sprain (AR 28). Sanchez was insured through December 2006. The Social Security Administration denied her application both initially and upon reconsideration (AR 124–31, 136–45). Sanchez timely requested an administrative hearing (AR 146–48).

In March 2015, Sanchez had a hearing before ALJ Nancy Lisewski (AR 44–67). The ALJ rendered a decision in May 2015, finding that Sanchez was not disabled (AR 39). Sanchez then requested administrative review, but the Appeals Council denied the request (AR 204–305). In November 2016, Sanchez filed the present action before this Court, seeking judicial review pursuant to 42 U.S.C. 405(g). Both sides now move for summary judgment (Dkt. Nos. 14, 17).

### 2. TESTIMONY AT THE ADMINISTRATIVE HEARING.

At the hearing, the ALJ heard testimony from Sanchez, Sanchez's daughter, Daisy Mendoza, and Thomas Lanville, a vocational expert. Sanchez stated that she worked in a restaurant she co-owned with her ex-husband until 2004 and in a tire shop she co-owned with him until 2006 (AR 50, 57–58). Sanchez testified that she could no longer work due to fibromyalgia and back pain, living with her daughters who work and support her (AR 50). She also referenced that she had trouble sleeping, fell about three times in a period of three months, and could not stay home alone for long periods because she frequently forgot things (AR 54–56). She indicated that she could leave the house to do errands by herself, but not for long, and that she liked to cook but needed help lifting heavy pans (AR 53, 54).

Mendoza testified that Sanchez had difficulty getting out of bed and taking her first steps every day. She also stated that she saw bruising on Sanchez's body caused by falling (AR 66).

Lanville testified that a person of Sanchez's age, education, and work experience, who was "limited to light work with no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling," could work as a hostess, waitress, or cashier II (AR 62). With the added condition of being able to stand or walk four hours a day and frequent bodily manipulations, Lanville testified that no past relevant work was available, but that such a person could work as a cashier in a confined work space, a hand packager, or a storage facility rental clerk (AR 63).

### 3. MEDICAL EVIDENCE.

In July 2012, Sanchez visited La Clinica de la Raza, reporting recent onset of joint pain, including joints in her legs and arms, and occasionally in her hip (AR 316). A physical examination revealed 5/5 strength in all extremities and no changes in sensation (AR 319). Later that year, Sanchez reported that she wanted to lose weight, that her leg pain had resolved, and that she was experiencing bilateral arm pain in her elbows and shoulders. She indicated that she could not work or cook with her left hand because she dropped things and that she was worried about rheumatoid arthritis because her mother had it (AR 324). A nurse assessed pre-diabetes mellitus and bilateral arm pain that was not consistent with rheumatoid arthritis.

In May 2013, Christine Fratino, D.O., saw Sanchez "for follow up on body pain," after Sanchez presented at the clinic and endorsed pain to her elbows that was worse when she lifted something heavy (AR 348, 327). Dr. Fratino assessed Sanchez with fibromyalgia, which is a disorder characterized by widespread muscle pain and tenderness. Dr. Fratino did not document any tender points during that visit or make note of her reasoning for the diagnosis, but recorded that Sanchez reported relief with use of Lyrica (AR 348).

Under SSR 12-2p guidelines, a fibromyalgia diagnosis requires a finding of at least eleven positive tender points — pain points or localized areas of tenderness around joints — upon physical examination. In June 2013, a fibromyalgia exam conducted at La Clinica documented five tender points (AR 331). But in August, Dr. Fratino documented more than seventeen tender points (AR 397).

In July 2013, Omar C. Bayne, M.D., a board certified orthopedic surgeon, examined Sanchez. His report included a recitation of Sanchez's medical and social history, a physical examination, his diagnostic impression, and an assessment of Sanchez's functional capacity (AR 342–44). He found that Sanchez exhibited a full range of movements in her joints and showed 5/5 strength in all extremities. Based on his examination, he opined that Sanchez should be able to stand and walk for four hours, sit for six hours, and lift and carry ten pounds frequently and twenty pounds occasionally, with occasional postural limitations (AR 344). He concluded that Sanchez did not have any manipulative limitations. A month later, a state

3

medical consultant reviewed Sanchez's records and opined that she was capable of performing a range of sedentary work (AR 76–77).

In December 2013, Dr. Fratino filled out a medical form, stating that Sanchez could engage in less than sedentary activity, indicating that she could lift or carry less than ten pounds, could stand or walk less than two hours, and could sit for a maximum of an hour (AR 263–64). Dr. Fratino stated that she based this report on Sanchez's history and assessments.

In January 2014, Sanchez informed Dr. Fratino that her pain was debilitating five days a week and that she could not move two days a week (AR 405). The following month, Dr. Fratino wrote a letter in support of Sanchez's request for permanent disability, opining that Sanchez suffered from debilitating and progressive fibromyalgia. She further noted that Sanchez reported four or five days a week, on average, when she was incapacitated (AR 273).

In October 2014, Maria V. Rivero, M.D., consultatively examined Sanchez and opined that she met the criteria for fibromyalgia because of widespread pain throughout her body for three years, eighteen tender points, insomnia, memory impairment, depression, fatigue, and because tests for other causes had come back negative (AR 432). Dr. Rivero reported that Sanchez had reduced ranges of motion in the cervical spine, lumbar spine, hips, knees, and shoulders but that she could get on and off the examination table without assistance and could walk on tip toes and heels (AR 429–31). During that visit, Sanchez reported that she had lost control of her legs and fallen down a few months prior to the visit.

Later that year Sanchez told Cecily Wait, M.D., that she had recently been in Mexico caring for her mother who was ill (AR 437). She reported that she had walked all day and had felt great because she was busy. In November 2014, Dr. Wait noted that Sanchez's fibromyalgia was stable (AR 442).

**ANALYSIS**

**1. LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v.*

*Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001)(internal citation omitted).

The use of the Medical-Vocation Guidelines, at step five is proper "where they *completely and accurately* represent a claimant's limitations" and the claimant can "perform the *full* range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original). Although "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1102.

**2. THE ALJ'S FIVE-STEP ANALYSIS.**

At step one of the sequential evaluation process, the ALJ found that Sanchez had not engaged in substantial gainful activity since December 2012 (AR 27).

5

At step two, the ALJ found that Sanchez suffered severe impairments of degenerative disc disease of the lumbar spine, obesity, chronic low back strain or sprain, and fibromyalgia (AR 28).

At step three, the ALJ found that none of Sanchez's impairments or combination of impairments met or equaled the severity of any impairment that would warrant a finding of disability without considering age, education, or work experience (AR 30–31). *See* 20 C.F.R. Pt. 404, Subpt. B, App. 1.

At step four, the ALJ determined that Sanchez could not perform any past relevant work, stating that she had the residual functioning capacity to perform light work and could stand or walk for four hours in an eight-hour workday. Moreover, the ALJ found that Sanchez could occasionally climb, balance, stoop, kneel, crouch or crawl (AR 31–38).

At step five, the ALJ found that, considering Sanchez's age, education, work experience and residual functioning, she can perform jobs that exist in significant numbers in the national economy, including working as a cashier, package inspector, or storage facility rental clerk (AR 38–39). The ALJ therefore concluded that Sanchez was not disabled.

### 3. THE ALJ DID NOT ERR IN HER TREATMENT OF SANCHEZ'S TESTIMONY AND FRATINO'S OPINION.

Sanchez primarily argues that the ALJ erred in her analysis of Sanchez's residual functional capacity because she partially discredited Sanchez's testimony and gave reduced weight to Dr. Fratino's opinion.

#### A. Sanchez's Lack of Credibility.

While the ALJ is not "required to believe every allegation of disabling pain," she cannot discredit a claimant by stating that "the claimant's symptom testimony . . . is 'inconsistent with' the [residual functional capacity] in [the ALJ's] disability determinations." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989); *Laborin v. Berryhill*, No. 15-15776, 2017 WL 3496031, at *3 (9th Cir. Aug. 16, 2017). Rather where, as here, the claimant presents evidence of ailments that "could reasonably be expected to produce the pain or other symptoms alleged," the ALJ must give "specific, clear and convincing reasons," identifying which

testimony she found not credible and which evidence contradicted that testimony. *Laborin*, 2017 WL 3496031, at *3.

Here, the ALJ found that "[Sanchez's] medically determinable impairments could . . . cause some of the alleged symptoms and limitations" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible" (AR 32). Thus, the ALJ specifically found that objective medical evidence contradicted Sanchez's testimony about the severity of her symptoms and limitations, namely that she was incapacitated four or five days a week (AR 37).

*First*, the ALJ did not err in considering the lack of medical evidence as a factor in rejecting Sanchez's testimony regarding the extent of her incapacity. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider [in assessing credibility]." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In *Burch*, our court of appeals held that the ALJ properly considered lack of consistent treatment as a factor in partially discrediting the claimant's testimony. Similarly, here, the ALJ specifically noted that Sanchez "[had] not received the type of medical treatment one would expect for a totally disabled individual" (AR 33). Rather, the record showed "essentially routine and conservative treatment" and that Sanchez "failed to show up for numerous follow up appointments and at least one pain management group meeting" (AR 37).

*Second*, the ALJ did not err in relying on Sanchez's activity levels and finding that they contradicted her testimony about the severity of her symptoms and limitations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Even activities that "suggest some difficulty functioning . . . may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Here, the ALJ noted that while Sanchez's attempt to work as a cooking instructor in 2010 was ultimately unsuccessful, "it [did] indicate that [Sanchez's] daily activities have been, at least at times, somewhat greater than [she] generally reported" (AR 37). Moreover, Sanchez reported to Dr. Fratino that she was unable to care for herself four to five days a week. Yet, a

few months later, she reported to Dr. Wait that she went to Mexico to care for her ill mother, stating that she walked all day and felt great due to her increased activity level (AR 437). The record also shows that Sanchez walked about half an hour each day and attended water aerobics three times a week as treatment for her pain (AR 32, 407). Thus, substantial evidence from the record supports the ALJ's determination that Sanchez has residual functional capacity to perform light work (AR 37).

Sanchez contends that her activities were "not inconsistent with fibromyalgia symptoms which by definition wax and wane" (Dkt. No. 14 at 12). But where, as here, the evidence as a whole "is susceptible to more than one rational interpretation" the ALJ's decision must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ therefore properly evaluated the testimony because she provided convincing and specific reasons for partially rejecting Sanchez's testimony and substantial evidence in the record supports her determination.

### B. Dr. Fratino's Opinion.

The ALJ properly discounted Dr. Fratino's opinion regarding residual functional capacity on the basis that it was not well-supported by the medical record and was inconsistent with other substantial evidence in the case record, including the opinions of Dr. Bayne and state agency consultants (AR 35). *See* 20 C.F.R. 404.1527(c)(2).

This order agrees that the ALJ erred in stating "no licensed physician documented tender points or other required criteria or findings" under the step-two analysis when both Dr. Rivero and Dr. Fratino documented tender points (AR 28). This error was harmless, however, because the ALJ nonetheless accepted Sanchez's fibromyalgia diagnosis in her step two analysis. The ALJ's harmless error at step two did not lead to error at later stages of analysis, as Sanchez contends, because the ALJ did not discredit Dr. Fratino's opinion regarding Sanchez's residual functional capacity based on the mistaken assumption that Dr. Fratino failed to document tender points. Rather, the ALJ found that the medical record as a whole did not support Dr. Fratino's assessment of Sanchez's residual functional capacity (AR 35–36).

Sanchez contends that "a lack of objective clinical findings . . . is insufficient to support" rejection of Dr. Fratino's opinion because lack of objective evidence is a hallmark of

fibromyalgia cases (Dkt. No. 14 at 9–10) (citing *Tully v. Colvin*, 943 F. Supp. 2d, 1157, 1169 (E.D. Wash. 2013)). This argument overlooks that Dr. Fratino's opinion not only lacked objective clinical support apart from a diagram documenting tender points; it was also brief, conclusory and devoid of independent analysis regarding Sanchez's residual functional capacity (AR 263–72). Therefore the ALJ did not err in discrediting it. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings.").

Sanchez contends that Dr. Fratino also provided a letter, not just conclusory notes, in support of her residual functional capacity analysis (Dkt. No. 18 at 4). But, here, Sanchez's self-reports regarding her degree of incapacity have already been properly discredited, and an ALJ may reject a treating physician's opinion if it is based "to a large extent" on discredited reports. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Thus, the ALJ's adverse credibility determination supports rejection of aspects of Dr. Fratino's that were "simply an echo of [Sanchez's] self-reported limitations," including her determination that Sanchez could not care for herself four or five days a week and therefore had a less than sedentary residual functional capacity (AR 35–36).

### 4. SANCHEZ'S OTHER ARGUMENTS FAIL FOR THE SAME REASONS.

Sanchez's other arguments are derivative of her contention that the ALJ erred in partially discrediting her testimony and in giving reduced weight to Dr. Fratino's opinion. *First*, the ALJ's failure to consider Mendoza's testimony was harmless error because the ALJ provided legally sufficient reasons for rejecting Sanchez's own testimony. Since Mendoza's testimony was duplicative — merely corroborating that Sanchez has difficulty getting out of bed, suffers from overall body pain, and is prone to falling — the ALJ's failure to address it was harmless error. *Molina*, 674 F.3d at 1122.

*Second*, Sanchez contends that if the ALJ had given greater weight to Dr. Fratino's opinion, she would have concluded that Sanchez would need to be absent from work one day a week and, therefore, could not perform any available jobs because there were no jobs for

9

someone of Sanchez's age, education, work experience, and residual functioning who misses one day of work per week (AR 64). But, as this order already explained, the ALJ properly discounted Dr. Fratino's opinion and this argument is therefore moot.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: August 22, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE